Anestis **KATELOUZOS**, Libellant.

v.

**THE S.S. OTHEM**, her engines, boats, tackle, etc., in rem, and **Rederi A/B Volo** and **A/B Aug. Leffler & Son**, a foreign corporation or association, as owners, operators and agents of said vessel, and **Dichmann, Wright & Pugh, Inc.**, individually and as agents of S.S. Othem and owners, in personam, Respondents.

No. 7971.

United States District Court
E. D. Virginia,
Norfolk Division.
June 14, 1960.

See also, D.C., 176 F.Supp. 954.

Sidney H. Kelsey, Peter K. Babalas, Norfolk, Va., for libellant.

Seawell, McCoy, Winston & Dalton, John W. Winston, Norfolk, Va., for respondents.

WALTER E. HOFFMAN, District Judge.

Libellant, a citizen of Greece, was employed as a member of the crew of the SS Othem on June 25, 1958, at which time he sustained an injury to his back when he slipped and fell down a ladder while carrying a tray to the refrigerator space for the purpose of securing some cold cuts to be served in the officer's mess. Plaintiff contends that the underlying cause of his fall was due to the dripping water or moisture from cartons of cold milk which had been left near the head of the ladder.

 The vessel flies the Swedish flag and there is no suggestion that it is a "flag of convenience". The Jones Act is not applicable merely because the accident occurred in the Port of Hampton Roads. Treating the action as one governed by the laws of Sweden, we find that libellant may, under appropriate circumstances, institute a cause of action for negligence, but there is no right of recovery predicated on unseaworthiness unless such unseaworthiness is caused by negligence. Under Swedish law, contributory negligence is not a bar to libellant's claim, but may be considered in mitigation of damages.

The vessel was docked at the grain elevator for the purpose of loading a cargo of grain. While the steward denied that any milk was brought aboard the vessel on the day of the accident, proctors have stipulated that the Swedish Consul, if called, would testify that 20 cartons of milk were sent aboard at an unknown time on June 25, 1958. The testimony supports the view that these cartons, contained within five cases, were brought aboard between 10:30 and 11:00 A.M.

Libellant observed the milk being carried aboard and noticed that the clothes of one of the men were wet, apparently caused by the moisture emanating from the containers. It was no part of libellant's duty to store the milk in the refrigerator space. The libellant sustained his injuries at some time between 11:30 A.M. and 12:15 P.M., and the vessel sailed at 2:40 P.M. on the same day, with libellant having been taken to the hospital in the interim.

Apparently not all of the cartons of milk were immediately taken to the refrigerator space. Some three or four cartons were on a platform immediately inside a doorway leading to the steps or ladder in question. There is some conflict in evidence as to the exact location of the milk cartons, but a sketch of the area strongly suggests, and the Court so finds, that the milk cartons were on a platform immediately inside the doorway, and not on the raised sill at the top of the stairway. The point is not of great importance as the drippings from the milk could have caused libellant's shoes to become wet and slippery in any event.

The libellant states that, on order of the master, he was en route to the refrigerator space to secure more cold cuts for the mess. He was holding a large platter, with five separate plates thereon, in his left hand. He did not see the milk, water or moisture on the sill, but did observe the cartons which, according to him, he endeavored to reach when he started to fall. He had previously been on the same ladder approximately 40 minutes prior to the accident, and it was clear with no cartons nearby.

Two light fixtures were in the area; one above the top of the ladder or platform, the other over the ladder near the bottom. The evidence discloses that both lights were burning, although the upper light was somewhat dim.

A language barrier existed between libellant and chief steward. While the Court is aware of the fact that certain orders may be given which are universally understood by all, without the ability to speak and understand the foreign

tongue, the Court cannot accept libellant's statement that, following the accident, he heard the chief steward, a native of Sweden, reprimand the cook for not having the ladder clean. Even at the time of trial nearly two years following the accident, during which period the libellant had remained in America and settled in Norfolk, libellant understood but very little of the English language and none of the Swedish tongue. Depite this, libellant quotes the steward as saying in English to the cook, "I have told you all to always clean the ladder." Such evidence seriously discredits libellant's testimony as a whole.

■ As unseaworthiness is not a factor for consideration under Swedish law, unless caused by negligence, the recent decision in Mitchell v. Trawler Racer, Inc., 80 S.Ct. 926, eliminating the defense of transitory unseaworthiness, is of no consequence. We turn to the issue of negligence. The evidence does not point to the essential elements of negligence. Assuming arguendo the existence of the milk cartons on the platform, the shortness of time prior to the accident does not prove actual or constructive notice of a condition made dangerous by the dripping or sweating of the milk. Finding that no negligence exists, and that no right of action lies for unseaworthiness under the facts of this case, the libellant's claim for damages must be dismissed without prejudice to his other remedies under Swedish law in accordance with the affidavits and pleadings on file.

■ The claim for waiting time occasioned by the delay in paying earned wages is without merit. As noted, the vessel sailed for New York a few hours after the accident on June 25, 1958. The master prepared the wage account and left libellant's earned wages with the Royal Consulate General at New York. On July 14, 1958, a period of eleven days after the institution of this action, the wages were paid by proctors for respondents and, in addition, libellant received sick wages for eight days in accordance with Swedish law. There has been no withholding of earned wages without sufficient cause in light of the prompt payment by proctors for respondents.

Libellant is entitled to maintenance at the rate of $7.50 per day for the period beginning October 3, 1958, through November 9, 1958. The rate is the same as paid to libellant before and after the aforesaid period.

A decree will be entered in accordance with this memorandum, which is adopted by the Court in lieu of specific findings of fact and conclusions of law.

Each party will bear his own costs.